NO. 07-11-00150-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



JUNE
27, 2011

 



 

ROBERT ANDREW BARNES, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 20TH DISTRICT COURT OF MILAM
COUNTY;

 

NO. CR20,781; HONORABLE EDWARD P. MAGRE, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

ABATEMENT AND REMAND

 

            On February 25, 2011, appellant,
Robert Andrew Barnes, filed a notice of appeal from a judgment adjudicating him
guilty of criminal non-support, sentencing him to eighteen months in a state
jail facility and a fine, and ordering restitution.  

            The
clerk’s record was filed on March 8, 2011 and the reporter’s record was filed
on April 28.  However, the clerk’s record
contains no certification of defendant’s right of appeal.  Texas Rule of Appellate Procedure 25.2(a)(2) requires that a trial court shall enter a certification
of defendant’s right of appeal each time it enters a
judgment of guilt or other appealable order. 
Tex. R. App. P. 25.2(a)(2). Under Rule 25.2,
the certification of defendant's right of appeal must be signed by the defendant and a
copy must be given to him. Tex. R. App. P. 25.2(d). 

            Accordingly, we abate the appeal and remand the cause to
the trial court.  On remand, the trial court
shall utilize whatever means it finds necessary to secure a certification of
defendant’s right of appeal that complies with Rule 25.2(d). Once properly executed,
the certification shall be included in a supplemental clerk's
record and filed with the Clerk of this Court.

This
order constitutes notice to all parties of the absence of a certification pursuant to Rule 37.1 of the Texas
Rules of Appellate Procedure. Tex. R. App. P. 37.1. If a certification that
shows appellant has the right of appeal is not made part of the record, the
appeal must be dismissed.  See Tex. R. App. P. 25.2(d).

On
remand,
the trial court is
directed to: (1) conduct any hearings it finds necessary; (2) make and file such
findings of fact, conclusions of law, recommendations or orders it finds
appropriate to address the subject of this remand order; (3) if it holds a
hearing, cause the hearing proceedings to be transcribed and included in a
supplemental reporter's record; (4) cause any findings, conclusions,
recommendations or orders it issues, together with the properly executed
certification of defendant’s right of appeal, to be included in a supplemental
clerk’s record; and (5) cause the supplemental reporter’s record, if any, and
the supplemental clerk’s record to be filed with the Clerk of this Court, no
later than August 8, 2011. 

It
is so ordered. 

Per
Curiam

Do not publish.






ery nervous,@ and was agitated
at being stopped.  The officer requested
background information concerning appellant and Hurtado
from the police dispatcher.

The officer asked
appellant for consent to search her vehicle. 
She refused.  He then placed her
in the back seat of his patrol car.  Some
three minutes later the officer received a return on the requested background
information.  According to the report,
appellant=s driver=s license was
invalid.  Appellant denied the report,
and asked the officer to rerun the request. 
The officer inquired of other names appellant used and resubmitted the
request to the dispatcher.   

After appellant
refused consent to search her car, the officer called for a canine unit to
conduct a free air sniff of the vehicle for narcotics.

Approximately
eighteen minutes into the stop, the officer told appellant he had requested a
canine.  He explained he would search her
car if the dog alerted but if the dog did not he would issue appellant a
warning ticket.  Two minutes later the
dispatcher confirmed the invalid status of appellant=s driver=s license.  Five minutes after the driver=s license return
the canine began a sniff of appellant=s vehicle.  According to the officer, the dog alerted and
a search of appellant=s vehicle yielded a quantity of
methamphetamine. 

Analysis

In a single issue,
appellant argues the trial court=s order denying
her motion to suppress violates the Fourth and Fourteenth Amendments of the
United States Constitution.  Appellant
does not challenge the propriety of the initial traffic stop.  Rather, her complaint is the officer lacked
reasonable suspicion to continue the detention for a canine sniff. 

A trial court's
ruling on a motion to suppress is reviewed for abuse of discretion. Oles
v. State, 993 S.W.2d 103, 106 (Tex.Crim.App.
1999).  In a suppression hearing,
the trial court is the sole judge of the credibility of the witnesses and the
weight given their testimony.  State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Crim.App.
2000).  We afford almost total
deference to the trial court=s determination of
historical facts.  Guzman
v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).  However, detention and reasonable suspicion
are by nature legal concepts and are properly subject to de novo review.  Hunter v. State, 955
S.W.2d 102, 107 (Tex.Crim.App. 1997); Sanders v.
State, 992 S.W.2d 742, 744 (Tex.App.--Amarillo
1999, pet. refused).  Accordingly,
for purposes of a Fourth Amendment analysis we give appropriate deference to
the trial court=s determination of historical facts, but
we review the decision of the trial court de novo as to whether the
historical facts, viewed from the standpoint of an objectively reasonable
person so situated as was the police officer, amount to Areasonable
suspicion@ justifying an investigatory
detention.  Ornelas v. United States,
517 U.S. 690, 697-99, 116 S.Ct. 1657, 1661-62,
134 L.Ed.2d 911 (1996); Guzman, 955 S.W.2d at 89.  When, as here, no findings of fact were
requested nor filed, we review the evidence in the light most favorable to the
trial court=s ruling and assume the trial court made
implicit findings of fact supported by the record.  See Ross, 32 S.W.3d
at 855-56. 

An investigatory detention is reasonable,
and therefore constitutional, if (1) the officer’s action was justified at the
detention’s inception; and (2) the detention was reasonably related in scope to
the circumstances that justified the interference in the first place.  Terry v. Ohio, 392 U.S. 1, 19-20, 88 S.Ct.
1868, 1879, 20 L.Ed.2d 889 (1968). 
Under the first prong of Terry,
the officer “must be able to point to specific and articulable
facts which, taken together with rational inferences from those facts,
reasonably warrant that intrusion.”  392
U.S. at 21, 88 S.Ct. at 1880.  The officer must have a “reasonable suspicion
that some activity out of the ordinary is occurring or has occurred, some
suggestion to connect the detainee with the unusual activity, and some
indication that the unusual activity is related to crime.”  Davis
v. State, 947 S.W.2d 240, 244 (Tex.Crim.App.
1997) (citing Meeks v. State, 653
S.W.2d 6, 12 (Tex.Crim.App. 1983)).  “The second prong of Terry deals with the scope of the detention. . . . [A]n
investigative detention, ‘like any other search, must be strictly circumscribed
by the exigencies which justify its initiation.’”  Id. at 243 (quoting Terry,
392 U.S. at 25-26, 88 S.Ct. at 1882).  Facts giving rise to reasonable suspicion may
be supplied by information from another person. 
Brother v. State, 166 S.W.3d
255, 257 (Tex.Crim.App. 2005).  

A routine traffic stop includes
investigation of the suspected offense as well as a license and warrant
check.  Kothe v. State, 152
S.W.3d 54, 63 (Tex.Crim.App. 2004).  The officer may also issue a citation.  United States v. Shabazz, 993 F.2d 431, 437 (5th Cir. 1993).  Only after a computer check of the license and
warrant status is completed and Athe officer knows
that this driver has a currently valid license, no outstanding warrants, and
the car is not stolen, [is] the traffic-stop investigation fully resolved.@  Kothe, 152 S.W.3d at 63-64, 65. 


Once the reason
for a routine traffic stop is resolved, the stop may not then be used as a A>fishing expedition
for unrelated criminal activity.=@  Davis, 947 S.W.2d at 243 (quoting Ohio v. Robinette, 519
U.S. 33, 41, 117 S.Ct. 417, 422, 136 L.Ed.2d 347
(1996) (Ginsburg, J., concurring)). 
Rather reasonable suspicion that another offense was or is being
committed is required to prolong the detention. 
Lambeth v. State, 221 S.W.3d
831, 836 (Tex.App.--Fort Worth 2007, pet. refused); McQuarters v. State, 58 S.W.3d 250, 256 (Tex.App.--Fort Worth 2001, pet. refused).  The officer must be able to point to specific
articulable facts, which, based on his experience and
personal knowledge coupled with logical inferences drawn from these facts,
warrant the additional intrusion.  Davis,
947 S.W.2d at 244. 
An officer is entitled to rely on all the information obtained during
his contact with a motorist in developing the articulable
facts justifying continued detention.  Razo
v. State, 577 S.W.2d 709, 711 (Tex.Crim.App.
1979); Powell v. State, 5 S.W.3d 369, 377 (Tex.App.--Texarkana
1999, pet. refused).  

Generally, a sniff
of the outside of a motor vehicle by a trained police dog is not a search
within the meaning of the Fourth Amendment. 
United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45, 77 L.Ed.2d 110 (1983) (seizure on
reasonable, articulable suspicion that luggage
contained contraband or evidence of crime); Crockett v. State, 803
S.W.2d 308, 310 n.5 (Tex.Crim.App. 1991); cf.
Illinois v. Caballes, 543 U.S. 405, 409, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005) (a canine free air
sniff of a vehicle conducted during a lawful traffic stop is not offensive to
the Fourth Amendment because it does not implicate any legitimate privacy
interest and may, therefore, be conducted absent reasonable suspicion).

Here, as noted,
appellant does not challenge the lawfulness of the officer’s initial detention
for the purpose of addressing her traffic violation.  Nor is it disputed that the officer
reasonably expanded his investigation into appellant’s lack of a valid driver’s
license.[3]

Appellant
contends, however, that once those purposes for her detention were resolved,
further prolonging of the detention was unreasonable.  And, she contends, the drug dog arrived some
five minutes after investigation of her traffic and driver’s license violations
was completed.  Boiled down, then, the
issue presented by appellant’s motion to suppress is whether the investigatory
detention of appellant was improperly prolonged during the roughly five-minute
period after the officers received confirmation her license was invalid but
before the drug dog arrived.

The valid purposes
for appellant’s detention were not limited to her driving violations.  More was at issue here than the traffic laws.[4]  The officer’s reasons for investigation start
with the tip from Trocchio that Kathy Mitchell and an
unidentified male were cooking methamphetamine at a particular address.  On appeal, appellant acknowledges that an
informant’s tip may give rise to reasonable suspicion authorizing an
investigative detention.  Reesing v. State, 140 S.W.3d
732, 737 (Tex.App.--Austin 2004, pet. refused); State v. Stolte,
991 S.W.2d 336, 343 (Tex.App.--Fort Worth 1999, no
pet.).  Citing Stolte at 341-42 she contends,
however, Trocchio’s tip required corroboration
because his status as an arrestee casts doubt on the reliability of his
statement.  She acknowledges the tip
received some corroboration when the named Kathy Mitchell drove into its driveway
that night while the officer was watching the residence.  Appellant contends, however, that the tip
regarding appellant’s drug activity at that address was not further
corroborated.  We disagree with
appellant’s view of the evidence.

            To begin with, the address Trocchio mentioned was not unknown to the officer.  He testified he had previously made “numerous
stops from that house . . . in reference to narcotics.”  Although the statement is lacking in detail,
the trial court reasonably could have inferred from the testimony the address
had been the site of drug activity.

And, by the time
the officer completed his investigation of the failure-to-signal offense that
formed the pretext for his initial detention of appellant, and his
investigation of her invalid driver’s license, the reasonableness of which are
not challenged, the officer was in possession of additional information. 

Appellant told the
officer she lived at the residence.  The
house, she explained, was “Todd’s” and she “believe[d]” his last name was
“Andres.”  Appellant also told the
officer she had “used about [every drug she] could” and had previously been
arrested in a nearby town for “cocaine.” 
But she considered herself “in recovery right now.”  She denied that Todd used drugs but added she
had a “couple of friends” who were users.

Appellant
initially told the officer she had her driver’s license and proof of insurance
with her.  Moments later, however, she
acknowledged her license was not “on me.” 
The officer’s initial records check indicated appellant’s driver’s
license was invalid.  As noted, appellant
denied this fact and requested another records check.

The officer told
the trial court that as appellant spoke with him, she was agitated, shaking,
and very nervous.  Our review of the video
supports the trial court’s implicit findings of these observations.  The officer can be heard on the video
recording telling his fellow officer that appellant “keeps moving around.”  

Reviewing the
trial court’s ruling, we consider the supporting facts and reasonable
inferences in the light most favorable to the ruling.  Bilyeu v. State, 136 S.W.3d 691, 694 (Tex.App.--Texarkana 2004, no pet.).  So viewed, we conclude all these facts served
to corroborate Trocchio’s information so as to make
reasonable appellant’s continued detention for investigation of drug activity
during the brief period of time in question here.  See
Alabama v. White, 496 U.S. 325, 329-331, 110 S.Ct.
2412, 2415-16, 110 L.Ed.2d 301 (1990) (under
totality of circumstances approach, relatively unreliable tip corroborated with
facts known to officers by personal observation met lesser reasonable suspicion
standard justifying investigative stop). 
It was not unreasonable for appellant’s detention to remain ongoing at
the time the dog arrived, some five minutes after the traffic stop ended.  

Appellant’s sole issue on appeal is
overruled.[5]

 

 

 

Conclusion

            Having overruled appellant’s issue,
we conclude the trial court did not abuse its discretion in denying appellant’s
motion to suppress.  Accordingly, we
affirm the judgment of the trial court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

Publish.  

 











[1] 
See
Tex. Health & Safety Code Ann. § 481.115(a),(b)
(West 2010).

 





[2] The facts stated
are drawn from testimony at the hearing of appellant=s suppression
motion and a video-audio recording of the stop admitted at the hearing.





[3] Nor does it appear
disputed that the officers had probable cause to search her car after they
observed the drug dog’s alert.

 





[4] In Shabazz, the court
referred to “garden variety Terry
stop[s].”  993 F2d at
436.  The officer’s detention of
appellant in the driveway of her residence was not a garden variety traffic
stop. 





[5] The parties did not brief, and we express no opinion, whether the
detention of appellant was justifiably prolonged following the completion of
the traffic stop by the attachment of probable cause to arrest appellant for
driving with an invalid driver’s license. 
Section 521.457(e) of the Texas Transportation Code as it existed in
August 2007, provided driving with an invalid driver’s license was a
misdemeanor punishable by a fine of not less than $100 or more than $500 and
confinement in the county jail for not less than seventy-two hours or more than
six months.  See Act of May 27, 2007, 80th Leg., R.S., ch.
1027, § 8, 2007 Tex. Gen. Laws 3567, 3568 (amended 2009) (current version at
Tex. Transp. Code Ann. § 521.457(e) (West Supp. 2010)).